HENRIETTA S. CARTER, EXECUTRIX, ESTATE OF R. L. CARTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14669. Promulgated January 17, 1930.

*C. F. McLaughlin, Esq.*, for the petitioner.
*Arthur H. Murray, Esq.*, for the respondent.

856

OPINION.

LANSDON: At the hearing of this proceeding counsel for the respondent confessed error in disallowing as deductions from the petitioner's gross income for 1920, the amounts of $240, $23.01, and $335.67, representing insurance on a building in process of construction, taxes on such building, and local taxes paid by petitioner during such year. Due adjustment should be made therefor in the recomputation of petitioner's tax liability for 1920 under Rule 50.

The petitioner's decedent was the president and principal stockholder of the Carter Sheet Metal Co. Prior to March 10, 1920, he completed the construction of a building suitable for the business of the corporation. On February 24, 1920, he offered such building to the stockholders of the corporation for a consideration made up of 225 shares of capital stock and the assumption of a mortgage then on such property in the amount of $17,500. This offer was accepted by proper action duly recorded and the purchasing corporation at some time thereafter, but within the year 1920, entered into the use and possession of the premises. The parties agree that the sales price was $40,000, and that the cost of the premises to the petitioner, as finally adjusted, was $34,730.38. As there is no question of depreciation involved it follows that profit in the amount of $5,269.62 was realized from the sale. The controversy here relates solely to the date at which the petitioner received his consideration and became liable for tax on any gain which he realized from the transaction.

The evidence leaves much to inference and conclusion. It is certain, however, that the offer of sale was made by the petitioner and accepted by the stockholders of the corporation on February 24, 1920; that on that date the directors were authorized to close the deal; and that on March 10 the directors voted to complete the purchase. The petitioner contends that he received nothing until January 4, 1921, and that the gain, if any, was realized at that date and taxable, if at all, in that later year. In our opinion the record does

not sustain this contention. There was an offer and acceptance, a complete meeting of minds not later than March 10, 1920, which were reduced to writing in the minutes of the corporation. In *Baker* v. *McDonald*, 74 Nebr. 595; 104 N. W. 923, the court, asked to determine the date at which title to certain personal property passed from seller to buyer, said:

The material question to be determined, then, is, who held title to the hay at the time this action was commenced? The modern doctrine undoubtedly is that neither delivery nor payment of the purchase money is generally requisite for vesting title to personal property in the buyer under a contract of sale; it being necessary only that the identical goods which are the subject of the contract should be ascertained and the price fixed. Newmark on Sales, § 159, gives the rule in the following language: "When the terms of sale are agreed on, and the bargain is struck, and everything that the seller has to do with the goods is complete, the contract of sale becomes absolute as between the parties without actual payment or delivery, and the property and the risk of accident to the goods vest in the buyer." Schouler's Personal Property, vol. 2, § 243, is as follows: "Where specific chattels are embraced under a contract of immediate sale, and nothing remains to be done to them, the presumed intent of the parties is that the right of property shall become transferred to the buyer and vest in him immediately upon the completion of the bargain by mutual assent, and, even though the seller subsequently continue in possession of the goods, the presumption remains the same as between the parties; his possession being that of a bailee with a right to recover his price."

In the instant proceeding there is a contract for immediate sale of certain property to the corporation with payment by the issue of shares of stock. It is reasonably clear that the seller delivered immediate possession and that thereafter nothing remained to be done except the delivery of the stock. The corporation had acted and thereafter the petitioner had the absolute right to demand the issue of the stock, which was none the less his property because it had not been evidenced in the form of a certificate. Even if there were no other material facts in evidence, we are convinced that title to the stock to be issued as consideration for the property purchased vested in the petitioner from March 10, 1920.

The record here plainly indicates that both seller and purchaser intended that the sale should be regarded as completed at March 10, 1920. The balance sheet of the corporation as of December 31, 1920, includes the real estate in question as an asset and the stock contracted to be issued therefor as a liability. It seems clear, therefore, that the corporation, in conformity with its action on February 24 and March 10, 1920, entered into possession of the purchased property in that year. That the stock certificate was issued on January 4, 1921, is not material, since the corporation charged itself with that obligation in 1920, took the amount represented thereby

into its liabilities as of that year, and included the value of the property in its assets. The parties being in agreement as to the cost, sales price, and readily realizable cash value of the stock at March 10, 1920, we are of the opinion, therefore, that the gain as adjusted by the respondent's confessions of error was taxable in 1920 under the provisions of section 202(2)(b) of the Revenue Act of 1918.

The respondent contends also that the petitioner realized gain in the amount of $8,347.35 from the sale of a certain patent to the corporation in exchange for 178 shares of stock. The petitioner's counsel asserts that such patent was given to the corporation without consideration, and that the 178 shares of stock were part of a stock dividend declared in 1920, but not distributed until January 4, 1921, and that if any tax liability resulted it attaches to income for the latter year. The evidence on this point is limited to the minutes of the corporation, which show that a stock dividend was declared on March 10, 1920, and to a stipulation of the parties that a certain stock certificate was issued on January 4, 1921.

The record here discloses that at December 31, 1919, no patents were included in the balance sheet assets of the corporation and that at December 31, 1920, there were such assets of the value of $9,847.35. It is clear, therefore, that some patents were acquired within the year 1920, but the petitioner contends that they were a gift to the corporation. If this be true it may explain how a corporation with a surplus of only $9,733.67 at December 31, 1919, was able, a little more than two months thereafter, to declare a stock dividend of $18,500 and charge the amount thereof to surplus. There is, however, no proof that the petitioner assigned any patents to the corporation without consideration. We are of the opinion, therefore, that the evidence fails to overcome the presumption that the Commissioner correctly determined the tax liability resulting from the sale of the patent to the corporation.

The petitioner suggests that the Board may determine his tax liability for 1921. Inasmuch as the respondent has asserted no deficiency for 1921, we are without jurisdiction as to that year. *Cornelius Cotton Mills*, 4 B. T. A. 255.

*Decision will be entered under Rule 50.*